IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MICHAEL A. McCOY, #354-584,       *

Petitioner,                        *

     v.                     *  Civil Action No. JKB-14-3845

STATE OF MARYLAND,          *

Respondent.                  *

                                  ***

## <u>MEMORANDUM OPINION</u>

Petitioner Michael A. McCoy ("McCoy") seeks habeas corpus relief pursuant to 28 U.S.C. § 2254, attacking the constitutionality of his 2008 convictions in the Circuit Court for Frederick County. (ECF Nos. 1, 3, 10). Respondent was directed to file an answer to the Petition and filed a limited answer (ECF No. 9), to which McCoy filed an amended Petition, a reply, and a supplement to the reply (ECF Nos. 10, 11, 12). Subsequently, Respondents were ordered to supplement their answer and have done so. (ECF No. 16.) McCoy filed a response to the supplemental answer. (ECF No. 18.)

This matter has been fully briefed. Upon review, the court finds no need for an evidentiary hearing. *See* Rule 8(a), *Rules Governing Section 2254 Cases in the United States District Courts* and Local Rule 105.6 (D. Md. 2016); *see also Fisher v. Lee*, 215 F.3d 438, 455 (4th Cir. 2000) (Petitioner not entitled to hearing under 28 U.S.C. § 2254(e)(2)). For reasons that follow, McCoy's Petition for writ of habeas corpus IS DENIED AND DISMISSED WITH PREJUDICE.

## Background and Procedural History

On February 13, 2008, McCoy was indicted on charges of first degree assault (Count 1), second degree assault (Count 2), first degree burglary (Count 3), fourth degree burglary (Count 4), first degree robbery (Count 5), theft under $500 (Count 6), and malicious destruction of property (Count 7). (ECF No. 3 at 2; ECF No. 9-2 at 4-6; ECF No. 9-7 at 4.) The events giving rise to these charges, as summarized by the Court of Special Appeals of Maryland, follow:

> Shortly after midnight on January 5, 2008, Laura Stevenson Chapman, an elderly woman, was asleep in her house at 206 Magnolia Avenue in Frederick. Although Mrs. Chapman was legally blind in one eye, she was otherwise in good health and took care of her own home and yard. When she went to bed that night, Mrs. Chapman's wallet was in her purse on a chair in her dining room. Mrs. Chapman was awakened by someone trying to open the back doors and breaking the bottom pane of the window in her kitchen door. She tried to call for help, but the phone line had been cut. The intruder then pried open a dining room window and opened cabinets and drawers in that room. He came upstairs, kicked open her locked bedroom door, pulled out drawers, and asked, "Where's the money?" When Mrs. Chapman replied that her money was downstairs, the man grabbed her arm, which broke, and pulled Mrs. Chapman down the steps, her face hitting every step. Once downstairs, the man took Mrs. Chapman's wallet out of her purse and exited the house.

(ECF No. 9-3 at 2-3; ECF No. 9-7 at 2.)

After a jury trial in the Circuit Court for Frederick County, McCoy was convicted on November 20, 2008, of first-degree assault, second-degree assault, and first-degree burglary, and the State entered a *nolle prosequi* on the remaining counts. (ECF No. 3 at 1-2; ECF No. 9-2 at 9; ECF No. 9-7 at 4.) On December 16, 2008, McCoy was sentenced to twenty years' imprisonment for Count 1, a consecutive term of twenty years for Count 3, and fifteen years for Count 5, to be served concurrently with the twenty years for Count 1. (ECF No. 3 at 1; ECF No. 9-2 at 4-5, 9; ECF No. 9-7 at 4.) Counts 1 and 2 were merged at sentencing. (ECF No. 9-2 at 9; ECF No. 9-7 at 4 n.1.)

2

McCoy filed a Notice of Appeal on December 22, 2008, arguing that the evidence was insufficient to sustain his convictions and that trial counsel was ineffective for failing to preserve the sufficiency of the evidence issue. (ECF No. 3 at 2; ECF No. 9-2 at 10; ECF No. 9-3 at 2; ECF No. 9-7 at 5.) In an unreported opinion filed on July 23, 2010, the Court of Special Appeals affirmed McCoy's judgments of conviction.[1] (ECF No. 3 at 2-3; ECF No. 9-3; ECF No. 9-7 at 5.) The appellate court's Mandate was issued on August 23, 2010. (ECF No. 9-2 at 10; ECF No. 9-3 at 11.) McCoy did not file a petition for writ of certiorari to the Maryland Court of Appeals. (ECF No. 3 at 3.)

McCoy filed a *pro se* petition for post-conviction in the circuit court on May 16, 2011, followed by a counseled amended petition on October 3, 2012. (ECF No. 3 at 3; ECF No. 9-2 at 10, 13; ECF No. 9-3; ECF No. 9-4; ECF No. 9-7 at 5.) McCoy raised numerous issues, including ineffective assistance of trial counsel, prosecutorial misconduct, unqualified expert testimony, an unrepresentative jury, flawed DNA testing, failure to merge sentences, violation of his right to a speedy trial, and ineffective assistance of appellate counsel. (ECF No. 9-3; ECF No. 9-4; ECF No. 9-7 at 1.) After a September 26, 2013, hearing, the circuit court denied McCoy's post-conviction petition in an Opinion and Order of Court dated December 3, 2013. (ECF No. 3 at 4; ECF No. 9-2 at 14; ECF No. 9-7 at 5, 22.) On January 2, 2014, McCoy filed an application for leave to appeal the adverse decision to the Court of Special Appeals, which denied the application on September 30, 2014. (ECF No. 3 at 4; ECF No. 9-2 at 14; ECF No. 9-

---

[1] Specifically, the Court of Special Appeals held that the insufficiency of the evidence claim had not been preserved for appellate review and that the ineffective assistance of counsel claim should be brought in a post-conviction proceeding, not on direct appeal. (ECF No. 9-3 at 6-7, 10; ECF No. 9-7 at 5).

7; ECF No. 9-8.)  The court's Mandate issued on October 31, 2014.  (ECF No. 9-2 at 14; ECF No. 9-8 at 3.)

McCoy filed his federal Petition on December 5, 2014,[2] alleging ineffective assistance of counsel, violation of the Equal Protection Clause based on the composition of the jury pool, sentencing merger issues, and prosecutorial misconduct.  (ECF No. 1.)  At the Court's direction (ECF No. 2), McCoy filed a supplement to the Petition, which the Court received on January 7, 2015.[3]  (ECF No. 3.)  On September 5, 2014, Respondent filed a limited answer, arguing that the Petition was a "mixed petition," containing both exhausted and unexhausted claims.  (ECF No. 9.)  In response, McCoy filed an amended Petition (ECF No. 10), a reply (ECF No. 11), and a supplemental reply consisting of additional evidence (ECF No. 12).  Upon review of these filings, the Court deemed it appropriate to direct Respondent to respond to the merits of McCoy's claims.  (ECF No. 13.)  Respondent did so on November 23, 2015.  (ECF No. 16.) McCoy was afforded the opportunity to file a response to Respondent's supplemental answer (ECF No. 17), which he did on December 18, 2015[4] (ECF No. 18).  On October 18, 2016, the Court ordered Respondent to supplement its responses by filing the transcripts of McCoy's trial and sentencing transcripts, having found them necessary for resolution of the Petition.  (ECF No. 19.)  Respondent complied on December 6, 2016.  (ECF No. 20.)

---

[2] The Petition is dated June 6, 2014, and is deemed filed on that date.  *See Houston v. Lack*, 487 U.S. 266, 276 (1988).

[3] The supplement is undated.

[4] *See* n. 2.

**Standard of Review**

Section 2254 states that a district court "shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

## I.      Threshold Considerations

### A.  Exhaustion

The exhaustion doctrine, codified at 28 U.S.C. § 2254(b)(1),[5] "is principally designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings.  Under our federal system, the federal and state courts [are] equally bound to guard and protect rights secured by the Constitution."  *Rose v. Lundy*, 455 U.S. 509, 518 (1982) (alteration in original) (internal citations and quotation marks omitted).  Moreover, "it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation ...."  *Id.*  Thus, the *Rose* Court cautioned litigants, "before you bring any claims to federal court, be sure that you first have taken each one to state court."  *Id.* at 520; *see also O'Sullivan v. Boerckel*, 526 U.S. 838, 839 (1999) ("Federal habeas relief is available to state prisoners only

---

[5] Section 2254(b)(1) states that:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that--
> (A)  The applicant has exhausted the remedies available in the courts of the State; or
> (B)  (i) there is an absence of available State corrective process; or
>      (ii) circumstances exist that render such process ineffective to protect the
>       rights of the applicant.
> (C)  An applicant shall not be deemed to have exhausted the remedies available in the courts of the
>       state, within the meaning of this section, if he has the right under the law of the state to raise,
>       by any available procedure, the question presented.

28 U.S.C. § 2254(b)(1).

5

after they have exhausted their claims in state court.").

### B. Procedural Default

In *O'Sullivan*, the Supreme Court stated: "To ... 'protect the integrity' of the federal exhaustion rule, we ask not only whether a prisoner has exhausted his state remedies, but also whether he has *properly* exhausted those remedies, *i.e.*, whether he has fairly presented his claims to the state courts."  526 U.S. at 848 (internal citation omitted); *see also id.* at 844 ("Section 2254(c) requires only that state prisoners give the state courts a *fair* opportunity to act on their claims.").  The inquiry, then, is "[w]hether a prisoner who fails to present his claims in a petition for discretionary review to a state court of last resort has *properly* presented his claims to the state courts.  ...  Because we answer this question 'no,' we conclude that [petitioner] has procedurally defaulted his claims."  *Id.* at 848.  Stated differently, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."  *Id.* at 845.  The *O'Sullivan* Court noted, however:

> In this regard, we note that nothing in our decision today requires the exhaustion of any specific remedy when a State has provided that that remedy is unavailable. Section 2254(c), in fact, directs federal courts to consider whether a habeas petitioner has "*the right under the law of the State to raise, by any available procedure,* the question presented." (Emphasis added.)  The exhaustion doctrine, in other words, turns on an inquiry into what procedures are "available" under state law.  In sum, there is nothing in the exhaustion doctrine requiring federal courts to ignore a state law or rule providing that a given procedure is not available.

*Id.* at 847-48; *see also Breard v. Pruettt*, 134 F.3d 615, 619 (1998) (quoting *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991)) ("A procedural default also occurs when a habeas petitioner fails to exhaust available State remedies and 'the court to which the petitioner would

be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.'").[6]

When a claim is procedurally defaulted, a federal court may not address the merits of a state prisoner's habeas claim unless the petitioner can show (1) both cause for the default and prejudice that would result from failing to consider the claim on the merits; or (2) that failure to consider the claim on the merits would result in a fundamental miscarriage of justice, i.e., the conviction of one who is actually innocent. *See Murray v. Carrier*, 477 U.S 478, 495-96 (1986). "Cause" consists of "some factor external to the defense [that] impeded counsel's efforts to raise the claim in State court at the appropriate time." *Breard*, 134 F.3d 615, 620 (4th Cir. 1998). In order to demonstrate prejudice, a habeas petitioner must show "not merely that the errors at his trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982); *see also Carrier*, 477 U.S. at 494 (quoting *Frady*). Even when a petitioner fails to show cause and prejudice for a procedural default, a court must still consider whether it should reach the merits of a petitioner's claims in order to prevent a fundamental miscarriage of justice. *See Schlup v. Delo*, 513 U.S. 298, 314-15 (1995).

### C. *Strickland*

When a petitioner alleges a claim of ineffective assistance of counsel, he must show both that counsel's performance was deficient and that the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Representation is deficient if it falls below an objective standard of reasonableness, considering all the circumstances. *Id.* at

---

[6] A procedural default may also occur when a state court declines "to consider the merits [of a claim] on the basis of an adequate and independent State procedural rule." *Yeatts v. Angelone*, 166 F.3d 255, 260 (4th Cir. 1999); *see also Breard*, 134 F.3d at 619.

688.

To satisfy the first part of this standard, it must be demonstrated that counsel's performance was not "within the range of competence normally demanded of attorneys in criminal cases." *Id.* at 687. The standard for assessing such competence is "highly deferential" and has a "strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance." *Id.* at 669. A federal court's consideration of ineffective assistance of counsel claims arising from state criminal proceedings is limited on habeas review due to the deference accorded trial attorneys and state appellate courts reviewing their performance. *See* 28 U.S.C. § 2254(d)(1). A petitioner must overcome the "'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'" *Burch v. Corcoran*, 273 F.3d 577, 588 (4th Cir. 2001) (quoting *Strickland*, 466 at 689). "There is a strong presumption that counsel's attention to certain issues to the exclusion of others reflects trial tactics rather than sheer neglect." *Harrington v. Richter*, 562 U.S. 86, 109 (2011) (citations and internal quotation marks omitted); *see also Sharpe v. Bell*, 593 F.3d 372, 383 (4th Cir. 2010) ("Counsel is not required to engage in the filing of futile motions."). "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Harrington*, 562 U.S. at 105 (citations omitted). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id.*

The second prong requires the court to consider whether counsel's errors were so serious as to deprive the defendant of a fair trial whose result is reliable and that there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have

been different. *Strickland*, 466 U.S. at 690-94. "The benchmark of an ineffective assistance claim must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result." *Id.* at 686. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. Rather, counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687. A determination need not be made concerning the attorney's performance if it is clear that no prejudice would have resulted had the attorney been deficient. *See id.* at 697.

The principles governing ineffectiveness claims apply in federal collateral proceedings as they do on direct appeal or in a motion for new trial. *Id.* at 697. Indeed, the presumption that a criminal judgment is final is at its strongest in collateral attacks on that judgment. *Id.*

## II. Analysis Framework

A federal court may not grant a writ of habeas corpus unless the state's adjudication on the merits (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

A state adjudication is "contrary to" clearly established federal law under § 2254(d)(1) where the state court "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the Supreme Court]." *Williams v. Taylor*, 529 U.S. 362, 405 (2000). Under the "unreasonable application analysis," a "state

court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington*, 562 U.S. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). In other words, "a federal habeas court may not issue the writ simply because [it] concludes in its independent judgment that the relevant state-court decision applied established federal law erroneously or incorrectly." *Renico v. Lett*, 559 U.S. 766, 773 (2010).

Under § 2254(d)(2), "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). "[E]ven if reasonable minds reviewing the record might disagree about the finding in question," a federal court may not conclude that the state court decision was based on an unreasonable determination of the facts. *Id.*

Further, "a determination of a factual issue made by a State court shall be presumed to be correct[,]" and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). "Where the state court conducted an evidentiary hearing and explained its reasoning with some care, it should be particularly difficult to establish clear and convincing evidence of error on the state court's part." *Sharpe*, 593 F.3d at 378. This is especially true where the state court has "resolved issues like witness credibility, which are 'factual determinations' for purposes of Section 2254(e)(1)." *Id.*

### Discussion

McCoy seeks habeas corpus relief based on the following allegations: ineffective assistance of counsel due to counsel's failure to preserve the insufficiency of evidence issue for direct appeal, a supposed conflict between counsel and McCoy, counsel's failure to subpoena

alibi witnesses, and counsel's failure to conduct any pre-trial investigation; violation of the Equal Protection Clause based on the composition of the jury pool; two instances of prosecutorial misconduct based on "racial baiting" in the prosecutor's opening statement and allowing false testimony by the victim; and sentencing merger issues. (ECF Nos. 1, 3, 10.) Respondent argues that McCoy's claims of error are unexhausted, procedurally defaulted, and/or fail on the merits. (ECF Nos. 9, 16.)

## I.      Exhaustion

Respondent first argues that the Petition contains unexhausted claims and is, therefore, a "mixed" petition, requiring dismissal on that basis unless McCoy withdraws the unexhausted claims. (ECF No. 9 at 1, 8, 11.) Specifically, Respondent states that McCoy's prosecutorial misconduct claims were never presented in the state courts under a theory of "prosecutorial misconduct," but, rather, as ineffective assistance of trial counsel. (ECF No. 9 at 7, ECF No. 16 at 8.) Respondent also contends that McCoy's claim that defense counsel failed to subpoena alibi witnesses was not raised as an ineffective assistance of counsel claim in the state courts. (ECF No. 16 at 8.) According to Respondent, "[t]hese claims could be presented in state court through a motion to reopen his postconviction proceeding in the interest of justice." (*Id.* (citing Md. Code Ann, Crim. Pro. Art., § 7-104).)

With respect to the prosecutorial misconduct claims, Respondent acknowledges that the claims were presented in the post-conviction court, as examples of ineffective assistance of trial counsel for failing to object to the opening statement and to cross-examine the witness more vigorously. (ECF No. 9 at 7 n.2.) Respondent further acknowledges that the alibi witness issue

was before the circuit court as an alleged *Brady*[7] violation by the prosecution in failing to provide the defense with information about those witnesses.[8] Respondent notes that McCoy "did complain, in his initial state post-conviction filing, that his trial counsel was insufficiently 'outrage[d]' by the State's disclosure." (ECF No. 16 at 8 n.2 (alteration in original).) Respondent argues that in his filings in this Court, McCoy "presents these general subject areas under vastly different legal theories than what was presented in the State court. There is a legal difference between an alleged *Brady* violation and ineffective assistance of trial counsel. There is a legal difference between ineffective assistance of trial counsel and prosecutorial misconduct." (*Id.* at 9.)

Although the Court may not grant relief on an unexhausted claim, "[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(2). The Court declines to dismiss the Petition on the basis that the above claims are unexhausted.

## II.     Procedural Default

Respondent next argues that other claims have been procedurally defaulted due to McCoy's "fail[ure] to present them in State courts when he had the opportunity to do so." (ECF No. 16 at 8.) Respondent notes that the post-conviction court found that McCoy had raised, but failed to present any evidence in support of, his conflict of interest and jury pool claims. (ECF No. 16 at 9-10.) As a result, the court found that McCoy had abandoned the claims. (ECF No. 16 at 9-10 (citing ECF No. 9-6 at 19-22); ECF No. 9-7 at 12-13, 19-20.) With respect to the

---

[7] *Brady v. Maryland*, 373 U.S. 83 (1963).

[8] McCoy also argued to the post-conviction court that counsel was ineffective for failing to challenge the alleged *Brady* violation. (ECF No. 3-1 at 9.)

latter, however, the circuit court, despite its finding of waiver, addressed the merits of the claim. Given that, despite its findings of waiver, the post-conviction court did address the substance of at least one of McCoy's claims, and also that Respondents were given an opportunity to address the merits of his claims (ECF No. 13; ECF No. 16), the Court will proceed to the merits of McCoy's claims.

### III. Merits of Claims

### A. Ineffective Assistance of Counsel

#### 1. Failure to preserve insufficiency of evidence issue

McCoy alleges that his trial counsel was ineffective because he failed to preserve the issue of the insufficiency of the evidence by moving for a judgment of acquittal without stating with particularity the reasons why the motion should be granted, thereby failing to preserve the issue for appellate review. (ECF No. 3 at 9; ECF No. 10 at 2.) Although McCoy argued on direct appeal that the evidence was insufficient to sustain his convictions (ECF No. 3-4 at 2; ECF No. 9-3 at 2), the Court of Special Appeals held that the sufficiency of the evidence claim was not before it "because defense counsel failed to make any argument in support of his motion or specify any deficiency in the evidence produced at trial in compliance with the requirements of Rule 4-324(a)" (ECF No. 9-3 at 7-8).

McCoy also argued that counsel's failure to preserve the sufficiency of the evidence issue for appellate review deprived him of his constitutional right to effective assistance of counsel. The Court of Special Appeals concluded that McCoy's ineffective assistance of counsel claim should be raised in a post-conviction proceeding rather than on direct appeal and declined to consider the claim. (ECF No. 9-3 at 8-10.)

13

McCoy did bring the claim on post-conviction review.  (ECF No. 3-1 at 10; ECF No. 9-7 at 19.)  The circuit court found that because McCoy and his counsel had failed to present any direct evidence in support of the claim, the claim had been abandoned (ECF No. 9-7 at 20), but nonetheless stated:

> The Court will, however, address the contention regarding the ineffective assistance of counsel as to the failure of Petitioner's trial counsel to make motions for Judgment of Acquittal, both at the end of the State's case and at the conclusion of all the evidence.  While the record clearly shows that these motions were not made, that fact alone does not equate to ineffective assistance of counsel and entitle Petitioner to relief.  Evidence of prejudice must be shown as well.  From a review of the record in this case, the evidence, viewed in the light most favorable to the State, is clearly sufficient to create a jury issue as to each count.  Therefore, any motion would have been denied.  Any error, therefore, is harmless.

(ECF No. 9-7 at 20.)

To be clear, the issue presented by McCoy was not the failure to make motions for judgment of acquittal, but, rather, to make the motions "without stating with particularity all reasons why the motion should be granted as required by Maryland Rule 4-324(a)."[9]  (ECF No. 9-3 at 7 (internal quotation marks omitted).)  However, the post-conviction court clearly utilized the proper standard for determining ineffective assistance of counsel by observing that McCoy had not demonstrated that he was prejudiced by counsel's alleged error.  (ECF No. 9-7 at 20.)  The court had previously articulated the *Strickland* test (*id.* at 5-6) and reasonably applied "clearly established federal law," 28 U.S.C. § 2254(d)(1), to the facts of the case.  Accordingly, McCoy's first ground for relief fails.

_____

[9] Alternatively, the Court finds that McCoy's claim of ineffective assistance of counsel based on counsel's failure to comply with a state procedural rule does not state a basis for federal habeas relief.  *See* 28 U.S.C. § 2254(a) (stating that an "application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court" shall be entertained "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States").

## 2. Conflict

McCoy next argues that trial counsel was ineffective because he continued to represent McCoy despite being aware of a conflict between himself and his client. (ECF No. 3 at 10-11; ECF No. 10 at 7-8.) Specifically, McCoy contends that counsel was aware that McCoy had written letters to trial counsel's supervisor "seeking appointment of new counsel and explaining the conflict" (ECF No. 10 at 7), and one to the Attorney Grievance Commission of Maryland (*id.* at 9). Despite this knowledge, trial counsel failed to bring the information to the attention of the trial court, in violation of Maryland Rule 4-215(e). (*Id.* at 8.) McCoy further alleges that counsel "violated Rule of Professional Conduct 1.16(b)(4) and Rule of Professional Conduct 1.2(a) when he failed to remove himself from the case after he became aware of the ongoing conflict with Petitioner." (*Id.* at 9.)

Again, the post-conviction court found that McCoy had failed to present direct evidence in support of his contention and, therefore, had waived it. (ECF No. 9-7 at 19-20.) In addition, as framed above, McCoy's allegation raises questions of procedural rules and rules of professional conduct, not constitutional issues. However, McCoy also argues that his right to effective assistance of counsel under the Sixth Amendment was violated (ECF No. 3 at 10-11), which is, of course, a concern of constitutional magnitude.

McCoy states:

[A] part of the reason there was a conflict between Petitioner and trial counsel was because trial counsel found it emotionally difficult to deal with the circumstances which surrounds the crime committed against an independent octogenerian Caucasian woman with failing eyesight. Trial counsel continuously made an effort to get Petitioner to accept a plea, then became irate with the Petitioner because he refused to plea[d] to a crime he did not commit. Petitioner's lack of confidence in trial counsel's representation caused him to write three letters seeking help in finding new counsel because he felt that trial counsel's

> representation from the outset must be and remain unimpaired, unrestrained, and untrammeled by commitments to others. By actions and statements, that was certainly not the case. Petitioner's right to a conflict free representation is not limited to situations involving multiple representations, but it extends to any situation in which counsel's actions (duties) are not clouded by emotions and are not inconsistent with the objective of providing effective representation to Petitioner.

(ECF No. 10 at 8.) As one specific example, McCoy states that "[t]rial counsel's failure and egregious refusal to call alibi witnesses to testify on Petitioner's behalf was linked to the three letters and the actual conflict." (*Id.*)

It is clearly established that the right to effective assistance includes the right to representation free from conflicts of interest. *See Rubin v. Gee*, 292 F.3d 396, 401 (4th Cir. 2002) (citing *Cuyler v. Sullivan*, 446 U.S. 335, 348-50 (1980)). Lawyers owe their clients a duty of loyalty, including the duty to avoid conflicts of interest. The Supreme Court has emphasized that the duty of loyalty is "perhaps the most basic of counsel's duties." *Strickland*, 466 U.S. at 692. An adverse effect, however, cannot be presumed solely from the existence of a conflict of interest. *See Mickens v. Taylor*, 535 U.S. 162, 170-75 (2002); *Rubin*, 292 F.3d at 401.

McCoy has not shown that there was an actual conflict between himself and his trial counsel, despite his disagreement with counsel's conduct of the trial. Nor has he demonstrated prejudice based on the alleged conflict. For example, he provides no evidence in support of his assertion that counsel's "failure and egregious refusal to call alibi witnesses" was linked to the letters McCoy had written to counsel's superior and to the Attorney Grievance Commission.

Trial counsel testified at the post-conviction hearing that the proffered alibi witnesses were problematic in that their testimony changed over time, at best did not provide a complete alibi, and also had provided statements that McCoy did not need a cane. (ECF No. 9-6 at 44, 48,

50, 52.)  Additionally, counsel testified that the statement of Atela Faith Al-Haqq[10] regarding McCoy's whereabouts at the time of the crime appeared to have been coached and improperly directed by other family members.  (*Id*. at 52-53.)

Counsel also testified in regard to McCoy's claims of errors regarding his pretrial and trial conduct offering his rationale in regard to review of the 911 tapes, cross-examination of the victim, challenges to the DNA evidence, and investigation pretrial.  (*Id*., at pp. 55-58,  83, 100-101, 115-116, 145-146.)  The post conviction court considered and rejected each of McCoy's claims of ineffective assistance of counsel.  (ECF No. 9-7.)

In short, McCoy has not demonstrated that he was prejudiced by an actual conflict between him and his trial counsel.  Accordingly, McCoy's claim of ineffective assistance of counsel on this basis fails.

### 3.  Failure to subpoena alibi witnesses

McCoy contends that counsel was "ineffective and in error for failing to subpoena and/or to provide notice of alibi witnesses ..." (ECF No. 3 at 12), in violation of the Sixth Amendment and Maryland Rule 4-263(e)(1) (*id*. at 11-12; ECF No. 10 at 10).  As noted above, this claim was presented to the post-conviction court as a claim of prosecutorial misconduct and also an allegation of ineffectiveness of trial counsel for failure to object to the *Brady* violation.  The circuit court found that the prosecutorial misconduct claim had been abandoned, but it addressed the ineffective assistance aspect of the *Brady* claim.  The court's reasoning is instructive with respect to the instant claim.

The court stated:

---

[10]  This witness's name is spelled variously in the record.  In this memorandum, the name is spelled in each instance based upon the particular source.

> Trial counsel's failure to challenge the transmission of these letters cannot be supported as a ground for ineffective assistance. In this case, trial counsel was aware of the testimony of the alibi witnesses that Petitioner claimed had exculpatory information. Trial counsel had the opportunity to interview each of these witnesses and obtained the same information that was provided in their respective letters. At the post-conviction hearing, there was no additional testimony regarding any additional information contained in these letters that would be considered exculpatory and unknown to the defense. Moreover, no evidence was provide[d] showing that the State's transmission of the letter[s] was in fact untimely. Therefore, trial counsel's failure to challenge the untimely transmission of the alibi witnesses cannot be considered a deficient act and clearly did not prejudice Petitioner's defense.

(ECF No. 9-7 at 12.)

It appears that McCoy's current claim is based on a difference of opinion as to trial strategy. The post-conviction court found that counsel was aware of the witnesses McCoy sought to have testify as well as the information they could have provided. Although McCoy states that the witnesses "could have established his whereabouts at the time of the crime ..." (ECF No. 10 at 10), thereby undermining the State's case and creating reasonable doubt (*id.*), he is clearly engaging in post-trial speculation.[11] Without clear and convincing evidence to support his speculation, counsel's decision, which was clearly premised on trial strategy, cannot be disturbed. *See Evans v. Thompson*, 881 F.2d 117, 125 (4th Cir. 1989). Having examined the post-conviction court's ruling as well as having independently examined the record, this Court is satisfied that in applying the *Strickland* standard to the instant allegations of trial counsel's allegedly deficient performance, McCoy has not demonstrated the prejudice necessary to establish his trial attorney's ineffectiveness. 28 U.S.C. § 2254(d). *See Stamper v. Muncie*, 944

---

[11] McCoy has provided a copy of a statement his alibi witness Attilah Faith Al-Haqq provided to police. The crime occurred at approximately 12:45 a.m. Al-Haqq advised police that McCoy was at her house on the night of the incident at around 11:00 p.m. She stated that he left about 11:30 or so and about an hour later she heard her mother arguing with McCoy. She further stated that about an hour later he left the home again. She also advised the police that she had witnessed McCoy walk perfectly fine without a cane. (ECF No. 3-3, p. 6.)

F.2d 170, 178 (4th Cir. 1991) (challenge to counsel's trial decisions and/or tactics amounted to no more than "Monday morning quarter backing"). As noted above, counsel testified at the post-conviction hearing as to the numerous problems with the proffered alibi witnesses. (ECF No. 9-6 at 44, 48, 50, 52, 121.) Counsel clearly made a strategic decision not to call the witnesses, which this court will not second-guess. The post-conviction ruling survives scrutiny.

### 4. Failure to investigate

McCoy asserts that trial counsel's

> failure to conduct an investigation for Defense purposes caused a breakdown in the adversarial process to such an extent that prejudice must be assumed and is a clear violation of Petitioner's rights under the Sixth Amendment. His performance amounted to there being NO effort on his part to conduct any pre-trial investigation as is illustrated throughout the trial.

(ECF No. 10 at 17.) McCoy points to counsel's testimony at the post-conviction hearing in which

> he admitted not going to the area in which the State's witness, Emily Anderson, lived to photograph the area in order to visualize it for various defense purposes, such as lighting, view obstruction, distances, and if the State's witness could have actually seen that to which she testified, especially since it was almost 1:00 AM, and it was obviously dark.

(*Id.*)

> The post-conviction court described McCoy's claim as follows:

> Moreover, in the Amended Petition for Post-Conviction Relief, Petitioner alleges that trial counsel "fail[ed] to investigate, photograph or otherwise document for the jury, the distance involved, the lighting present, and the impossibility of Ms. Anderson being able to discern an individual's eye color the significan[t] distance away, at 1 a.m., in the morning."

19

(ECF No. 9-7 at 8 (first alteration in original) (internal citations omitted).)[12]  The court noted

that, despite counsel's testimony that he had not personally taken any photographs near the

witnesses' home, visited the location at night to view the lighting conditions, or taken any

measurements between the witness and where she claimed to have seen the perpetrator, "trial

counsel did cross-examine Emily Anderson on her credibility to adequately identify the

perpetrator based on the conditions existing at the time the incident occurred."  (*Id.*)  After

quoting at length from the witness's trial testimony (*id.* at 8-10), the court stated: "This cross-

examination laid the foundation for the jury to infer that Emily Anderson could not adequately

identify the suspect she saw on the evening of the incident at issue.  Having laid this foundation,

trial counsel was free to develop the inference during closing arguments, which he did."  (*Id.* at

10.)

> The circuit court concluded:
>
> Although trial counsel did not physically investigate the location of Emily
> Anderson's residence, this Court is not persuaded that this omission prejudiced
> Petitioner's defense.  Therefore, Petitioner has not satisfied the burden of proof
> and the claim [for] relief due to ineffective assistance of counsel cannot be
> granted on this ground.

(*Id.* at 10.)  The court reached its conclusion after properly stating the *Strickland* standard, and

the court's application of that standard to the facts of the case was reasonable.  Whether retained

or appointed, defense attorneys do not have infinite amounts of money and time with which to

investigate and pursue substantially all plausible lines of defense, nor is such conduct realistic or

constitutionally mandated.  *See Washington v. Watkins*, 655 F.2d 1346, 1356 (5th Cir. 1981)

("'counsel for a criminal defendant is not required to pursue every path until it bears fruit or until

---

[12] McCoy also alleged ineffectiveness of counsel based on counsel's failure to "challenge or rebut the testimony of
Emily Anderson regarding her ability to adequately identify the perpetrator given the time of night, lighting, and
distance between them when she claims to have seen him."  (ECF No. 9-7 at 8.)

all conceivable hope withers'" (citation omitted)). The fact that counsel could have conducted a more thorough investigation that might have borne fruit does not establish that the attorney's performance was outside the wide range of reasonably effective assistance. *See Burger v. Kemp*, 483 U.S. 776, 794-95 (1987). Even assuming that defense counsel's failure to investigate was unreasonable, McCoy has failed to offer any evidence, much less establish, that but for counsel's alleged error, the outcome of his trial would have been different. Therefore, this court, too, finds no basis for relief based on counsel's failure to investigate.

### B. Exclusion of African-Americans from the Jury Pool

McCoy contends that his rights under the Equal Protection Clause of the Fourteenth Amendment were violated by the exclusion of African-Americans from the jury pool from which the petit jury was selected. (ECF No. 3 at 9-10; ECF No. 10 at 3-4.) According to McCoy, the exclusion of African-Americans gave the appearance of bias and most likely affected the outcome of the trial. (ECF No. 10 at 6.)

> The circuit court stated:
>
> Md. Rule 4-312(a)(3) states that "[a] party may challenge the array on the ground that its *members were not selected or summoned according to law*, or on any other ground that would disqualify the array as a whole." (emphasis added). No testimony was provided at the post-conviction hearing that members of the array were not selected or summoned according to law. Without such challenges or testimony regarding the Frederick County jury selection process, it is presumed that jury array in Petitioner's case was adequately representative.

(ECF No. 9-7 at 12-13 (alteration in original).) Although McCoy argues that "[w]ith no African-Americans in the Jury Pool, the Petit Jury obviously didn't reflect the population make up of Frederick County, Maryland" (ECF No. 10 at 4), and has provided a "Quick Facts" sheet pertaining to the population of Frederick County (ECF No. 18-3), as was the case in state court,

he has provided this Court with no evidence of any impropriety on the part of Frederick County in its jury selection process. Therefore, as did the post-conviction court, the court rejects McCoy's Equal Protection claim.

## C. Failure to Merge Sentences

McCoy argues that the trial court erred by failing to merge certain charges for sentencing purposes in violation of Maryland statutory and case law. (ECF No. 3 at 13; ECF No. 10 at 12.) McCoy raised this allegation on post-conviction review in the circuit court. (ECF No. 3-1 at 15-17.) The post-conviction court first stated that McCoy had not presented any evidence in support of the contention at the post-conviction hearing. (ECF No. 9-7 at 20.) The court further stated that the claim was not properly before it as McCoy could have raised it on direct appeal. (*Id.*) Therefore, the circuit court found that McCoy had abandoned the claim.

The post-conviction court, however, also observed:

> Had this contention been properly before this Court, this Court finds that the sentences of First Degree Assault and First Degree Burglary still could not be merged. Under the "same evidence" rule, criminal "violations are separate if each 'requires proof of an additional fact which the other does not,' or, stated another way, if '[e]ach of the offenses created requires proof of a different element.'" *Whack v. State*, 288 Md. 137. 142 (1980). Comparing the elements of first degree burglary (Md. Code, Criminal Law, § 6-202) and first degree assault (Md. Code, Criminal Law, § 3-202), it is clear that each offense requires proof of different facts and elements than the other and therefore could not have been merged.

(ECF No. 9-7 at 21 (footnote omitted).)

It is clear from the foregoing that McCoy's sentence merger issue requires interpretation of Maryland law. It is not the province of this Court to question state court interpretations of state laws. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). Accordingly, this claim does not provide a basis for federal habeas relief. *See* 28 U.S.C. § 2254(a).

**D. Prosecutorial Misconduct**

**1. "Racial baiting"**

As noted above, McCoy framed this issue as an ineffective assistance of counsel claim based on counsel's failure to object to the alleged "racial baiting" by the prosecutor. (ECF No. 9-7 at 13.) As the post-conviction court recounted, "This allegation is based on the State's Attorney's opening statement, where he stated: 'At this point in time you can only imagin[e] she sees a six foot tall black man in her room demanding money, she's fearing for her safety.'" (*Id.* (quoting trial transcript).) The court stated:

> At the post-conviction hearing, trial counsel testified that he did not see a problem with this statement being presented by the State's Attorney. Trial counsel further testified that he assumed the State's Attorney needed to prove his case and that this was information that he would prove during his case in chief.

(*Id.* at 14.) The circuit court found that counsel's failure to object to the statement was neither a deficient act nor prejudicial to McCoy. (*Id.*)

Undesirable remarks by the prosecution do not necessarily mandate a new trial, unless they so infect the trial with unfairness that the resulting conviction is a denial of due process. *See Darden v. Wainwright*, 477 U.S. 168 (1986); *United States v. Weatherless*, 734 F.2d 179 (4th Cir. 1994). In determining whether improper prosecutorial comments so damaged the trial as to require reversal, this court must consider (1) the degree to which the comments misled the jury and prejudiced the accused; (2) whether the comments were isolated or extensive; (3) whether competent proof established guilt, irrespective of the comments; and (4) whether the comments were deliberately placed before the jury to divert attention to extraneous matters. *See United States v. Harrison*, 716 F.2d 1050 (4th Cir. 1983); *United States v. Brockington*, 849 F.2d 872 (4th Cir. 1988); *United States v. Odom*, 736 F.2d 104 (4th Cir. 1984).

McCoy argues that the prosecutor made the statement "knowing that in this case an African-American man is being accused of a crime against a Caucasian woman in a trial in which there are no African-Americans on the jury." (ECF No. 3 at 14.) Here, evidence of guilt was overwhelming and the comments were not extensive. McCoy has presented this court with no evidence of improper purpose on the part of the prosecutor in making the above-quoted statement, nor has he offered evidence of prejudice. The post-conviction court's finding will be deemed presumptively correct, pursuant to 28 U.S.C. § 2254(d) and (e).

### 2. Allowing false testimony

McCoy also alleges prosecutorial misconduct based on the prosecutor's alleged "knowingly allowing the false testimony of the victim" (ECF No. 10 at 14) and allowing the testimony to stand (*id.*; ECF No. 3 at 14).[13] According to McCoy, the victim's trial testimony regarding the description of her assailant was "inconsistent with her initial statement to the 911 operator, the police officers who interviewed her at the scene of the crime moments after the crime happened and the detective who interviewed [her] much later." (ECF No. 3 at 14.) In the circuit court, McCoy argued that trial counsel "failed to adequately respond to Mrs. Chapman's description of her assailant." (ECF No. 9-7 at 14.)

A prosecutor's knowing use of perjured testimony is a violation of due process if there is any reasonable likelihood that the testimony could have affected the judgment. *United States v. Bagley*, 473 U.S. 667, 678 (1985) (quoting *United States v. Agurs*, 427 U.S. 97, 103 (1976)). A petitioner making such a claim must show more than a recantation by a witness or

---

[13] McCoy also suggests that the victim's allegedly evolving testimony was "improperly assisted by the State's Attorney." (ECF No. 3 at 14.) He appears to contend that the prosecutor improperly assisted the victim by "allow[ing] the knowingly false testimony [regarding the alleged inconsistencies in her description of her assailant] to stand." (ECF No. 10 at 14.)

inconsistencies in the witness's testimony.  He must show that the prosecutor knew the testimony was false. *United States v. Griley*, 814 F.2d 967, 970 (4th Cir. 1987).

McCoy has once again provided this court with no evidence whatsoever that the victim was testifying falsely or that the prosecutor knew that the victim was testifying falsely, much less had any role in orchestrating any false testimony. McCoy's arguments are based solely on perceived inconsistences in the evidence, which are insufficient to show a constitutional violation.

## CERTIFICATE OF APPEALABILITY

Under the amendments to Rule 11(a) of the Rules Governing Proceedings under Section 2254, "the district court must issue or deny a certificate of appealability [COA] when it enters a final order adverse to the applicant…If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  A COA may issue only if the petitioner "has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2); *see Buck v. Davi*s, 137 S. Ct. 759, 773 (February 22, 2017).  The petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274. 282 (2004) (citation and internal quotation marks omitted), or that "the issues presented are adequate to deserve encouragement to proceed further," *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). McCoy has failed to make a substantial showing that he was denied a constitutional right, and the court finds that reasonable jurists would not find the denial of habeas relief in this case debatable.  Accordingly, a certificate of appealability shall not issue.[14]

---

[14] Denial of a certificate of appealability in the district court does not preclude McCoy from requesting one from the court of appeals.

## CONCLUSION

For the above reasons, the court concludes that McCoy's Petition provides no grounds for

habeas corpus relief.  Accordingly, the Petition is DENIED and DISMISSED.

A separate Order follows.

September 27, 2017                                           _____/s/_____
Date                                                         James K. Bredar
                                                             United States District Judge